Greek, Judge,
delivered the opinion of the court:
On March 3, 1931, Congress passed an act authorizing this court—
“ * * * to hear and determine and report to Congress the claims of the Federal Real Estate and Storage Company as owners of lands lying partly in Montgomery County, Maryland, and partly in the District of Columbia, arising out of the taking and closing of the Little Falls Road, leading from the Conduit Road to the aforesaid lands of the Federal Real Estate and Storage Company, by the building of the Dalecarlia filtration plant and other buildings in connection therewith, and for the closing of a road substituted therefor by the agreement of the United States district engineer and the Federal Real Estate and Storage Company, any statute of limitations to the contrary notwithstanding.”
The Federal Real Estate and Storage Company referred to in this act is one of the plaintiffs in this action and joined with it is Hugh J. Phillips who was the president and sole owner of all of the stock in this corporation. This suit, however, is not founded upon the special act of Congress above set forth, although it is pleaded in the last paragraph of the petition, presumably to show that the statute of limitations was not a bar to an action on the part of the Federal Real Estate and Storage Company.
This action is begun to recover compensation for injury or damage alleged to have been sustained by reason of The *674 closing of the Little Falls Road to which reference is made in the act of Congress. There is much conflict in the testimony offered in the case, but in the main we concur in the findings of fact made by the commissioner who, in his report, has set out much of the evidence in detail. In our conclusions thereon we have reduced the commissioner’s findings to the ultimate facts as required by the Supreme Court, and they are recited hereinafter so far as we consider them material to the decision of the case.
It appears from the evidence without dispute that the Conduit Road is one of the main thoroughfares leading out of Washington in a northwesterly direction. In its general course it follows the Potomac River to Great Falls at a short distance from the stream. About four miles out of the city, the United States has owned for more than half a century a tract of land containing about 281% acres, which is intersected by the Conduit Road and the line between the District of Columbia and the State of Maryland. The greater part of this property is situated on the right-hand side of the Conduit Road going toward Great Falls from Washington. A smaller portion lies between the road and the river, and on this part the Government has constructed dwellings for its employees, and other improvements connected with the water system that furnishes water to the Capital City. The claim in this case referred to in the act of Congress is made in connection with a tract adjacent to defendant’s land and on the west side thereof which was purchased by Hugh J. Phillips from Agatha O’Neale and by him caused to be conveyed to the Federal Real Estate and Storage Company.
This tract is irregular in contour and its length is much greater than its width. It comprises something over 26 acres and its situation is such that in order to obtain suitable access to and egress from this tract the owner thereof must have passage to the Conduit Road. This action is based upon the allegation that the ownership of the tract of land last described carried with it as appurtenant thereto, a right-of-way over the defendant’s land to Conduit Road, which the defendant has obstructed and closed. The findings of fact *675 show that defendant closed the alleged right-of-way, bnt the defendant contends in substance—
First. That neither of the parties plaintiff has any right to begin this suit;
Second. That the necessary parties to the suit have not been joined;
Third. That the alleged right-of-way never existed or, if it did, it has been extinguished by condemnation proceedings and has been abandoned by nonuser and adverse possession;
Fourth. That if the defendant took any easement belonging to plaintiff it was under a claim of right and complete title in the United States and therefore there would be no implication of a contract to pay for what was taken.
The facts upon which the right of the plaintiffs or either of them to commence this action depends are as follows:
In 1918 Hugh J. Phillips entered into a contract with one Agatha O’Neale to purchase certain parcels of land here-inbefore referred to as the land conveyed to the Federal Real Estate and Storage Company. In 1920 Phillips attempted to incorporate the Federal Heal Estate and Storage Company under the laws of the State of Delaware, and a certificate of incorporation was issued by the Secretary of State but not recorded as required by law. On March 21,1923, the Governor of the State issued a proclamation declaring that the charter of this company was repealed, and on January 23, 1924, the Governor issued another proclamation declaring the corporation dissolved for the nonpayment of taxes. Under these facts, it is contended on the part of the defendant that before the cause of action upon which suit is brought came into existence the corporation was dissolved and no longer existed for the purpose of maintaining an action. It is further contended that as the laws of the State of Delaware provide in substance that within three years of the dissolution of the corporation a receiver may be appointed to wind up its affairs, the only person (if anyone) who could bring this suit is a receiver appointed in the State of Delaware for that purpose.
Both parties agree that prior to its dissolution the Federal Beal Estate and Storage Company was a de faoto corpora *676 tion. This existence as a de facto corporation was terminated by its dissolution under the proceedings carried out by the State and it is not now claimed that the corporation has any right to be a party plaintiff herein. It is, however, contended on behalf of the plaintiff Phillips that the statute of Delaware upon which the defendant relies is merely permissive; that it was not necessary under the circumstances of this case that a receiver should be appointed; that upon the dissolution of the corporation the legal title to all of its property passed to the plaintiff Phillips who was the sole owner of all the stock of the corporation and its president; and that by reason of holding the legal title Phillips is entitled to bring this suit.
Section 40 of the General Corporation Act of the laws of Delaware provides in substance that when a corporation is dissolved it may be continued for three years thereafter for the purpose of prosecuting and defending suits, settling and closing its business, etc. As this action was begun more than three years after the dissolution of the corporation it is manifest that it has no application to the case.
Section 43 of the same act provides in substance that when a corporation is dissolved, the court of chancery may, on application of any creditor or stockholder of such corporation, either continue such directors as trustees or appoint a receiver to take charge of the estate and effects thereof and to collect the debts and property due the company.
Section 44 of the same act provides that the court of chancery shall have jurisdiction of said application and all questions arising in the proceedings thereon.
The principal issue in the case is whether the last two sections above referred to provide an exclusive remedy or whether the remedy is merely permissive.
In the case of Harned v. Beacon Hill Real Estate Co., 9 Del. Ch. 232, the court held that a receiver might be appointed although three years had elapsed since the dissolution of the corporation. The decision was affirmed on appeal to the Supreme Court (9 Del. Ch. 411) in which there was some discussion of the application of the Delaware statutes.
*677 Under the old common law npon the dissolution of a corporation its real estate reverted to the grantors or donors thereof. But this rule has been modified and changed in modern times by courts of equity and legislative enactments (14a. C.J., sec. 3807), and the general rule now is that “ In the absence of statute the legal title to property belonging to the corporation passes by operation of law to the stockholders, who are the beneficial owners through the corporation ”, even though there is a statute providing for the appointment of a receiver (14a. C.J., sec. 3808).
In Pewabic Mining Co. v. Mason, 145 U.S. 349, 356, it appeared that the charter of a mining company had terminated and it was held that upon such termination its property “ belonged to the different stockholders as tenants in common.” The same principle was followed in Stearns Coal & Lumber Co. v. Van Winkle, 221 Fed. 590, wherein it was said, “ The Pewabic case recognized the right of stockholders to agree among themselves upon the disposition and transfer of the assets.” It should be noted in this connection that it appeared in the Stearns case that in the State where the corporation was created the law provided a method of winding up the affairs of the corporation.
In Baldwin v. Johnson, 65 S.W. 171 (Texas), it was held with reference to a dissolved corporation that where there was no receiver, trustee, or creditors in existence the legal and equitable title to the property of the corporation united in the stockholders.
We think the Delaware statute with reference to the appointment of a receiver was merely permissive and did not deprive the stockholders of any right of action which they otherwise had. In this connection it should be noted that the Delaware statute with reference to the appointment of a receiver is merely a statement by statutory law of a general rule of equity which would apply if the statute had never been enacted.
The authorities are practically uniform in holding that on the dissolution of a corporation the legal title to the property of the corporation rests in the stockholders. It is true that in most of the cases so holding the court found *678 that there were no' creditors and that in the case at bar no such finding can be made and possibly the presumption is that there were some creditors. We do not think that this alters the rule or prevents a sole stockholder from beginning a suit to recover on a chose in action belonging to the corporation. In many of the decisions bearing on this subject there was no finding one way or the other as to the existence of creditors. In Taylor v. Interstate Investment Co., 135 Pac. 240 (Wash.), it is said that in the case of a dissolved corporation whatever property rights it had “ would pass on such dissolution to the stockholders subject to corporation liabilities. Purdy’s Beach Corporations, par. 1323.” In cases where there are creditors the stockholders suing would hold whatever they acquired through the action subject to the claim of the creditors and as trustees for them to the extent of their just claims, but this would not necessarily require the appointment of a receiver. Such an expensive and cumbersome proceeding should not be required unless good cause is shown on application of some of the creditors or stockholders. In this case there were no other stockholders, and the creditors could easily protect themselves by intervention if they were interested in the proceedings.
The legal title to' the property which the corporation had in the first instance acquired must be in some party. It cannot be in the corporation, for the corporation having been dissolved by and under the authority of the State, can no longer have title to the property. This seems to be conceded on the part of the defendant. It cannot be in a receiver, for no receiver has been appointed. It cannot be in any creditors, for they have only equitable rights. We think that in the case at bar the legal title must rest in Hugh J. Phillips, who was president and sole stockholder. Having the legal title, it follows that he had the right to commence this suit and could commence it in his own name.
It is further contended on behalf of defendant that there is a defect of parties in the case in that it appears that the de faoto corporation had executed certain trust deeds upon the property held by it to secure the payment of in *679 debtedness. Whether the indebtedness still exists does not appear from the evidence. If it does, the trustees could have made an application to be made parties to the suit, but they are not necessary parties, and the fact that they have received certain trust deeds gives them only an equitable interest in the property. The defendant also, if it was considered necessary to protect its rights, could ask the court to make these trustees parties to the suit, but.no such application has been filed. We conclude that there is no defect of necessary parties.
The defendant also contends that land which it acquired known as the Dalecarlia tract was not burdened with any right-of-way or easement in favor of the owners of the land which Phillips purchased from Agatha O’Neale, as shown in the findings of fact. The defendant’s title, however, is traced back to a deed executed to William B. Thompson, which conveyed the tract of land known as Dalecarlia. It would require too much space to set out the provisions of this deed in full. It is sufficient to say that this deed and another which was a part of the defendant’s chain of title, reserved a right-of-way over defendant’s land by an existing and accustomed roadway which was in fact what was known as the Little Falls Road, and this easement subsequently was acquired by Agatha O’Neale in connection with the lands which she conveyed to the Federal Real Estate and Storage Company.
The question is raised whether the alleged right-of-way has been extinguished by condemnation proceedings or has been abandoned by nonuser and adverse possession. There were no condemnation proceedings that applied to the Little Falls Road. It would serve no useful purpose to discuss the testimony which bears on the question of abandonment. The findings show that the right-of-way in controversy over the Little Falls Road had been used for more than forty years and though sometimes interrupted and in some manner obstructed the right to passage over it was never disputed even by defendant. The testimony on this point is such as to establish this easement independent of the reservations in the deeds.
*680 It is also urged that if the defendant took any easement belonging to plaintiff it was under a claim of right and complete title in the United States. But this contention is refuted by the letters written by the Acting Secretary of War and the Chief of Engineers as well as by other testimony in the case which in effect concedes that the right-of-way existed.
The evidence shows conclusively that the defendant constructed a filtration plant on the Dalecarlia tract and in the course of its construction completely obstructed the plaintiff’s right-of-way by building some other improvements. During the course of the construction defendant through its officer in charge agreed to a relocation of the right-of-way over the land of defendant and a relocated road which gave free access to the land of plaintiff was constructed and put in use as a substitute for the Little Falls Road, but in October 1927, the defendant, through its officers in charge, closed the relocated road and cut off any lawful access to the property of plaintiff. While there were some negotiations with a view to opening another passage, no road was furnished which gave free and undisputed access to plaintiff’s land. The evidence shows without dispute that this action on the part of the defendant greatly depreciated the value of plaintiff’s land, but the testimony is in conflict as to the extent of the damage. After going over the testimony, we concur with the Commissioner that the value of plaintiff’s land and the building on it was $50,000 before being deprived of the right-of-way, and after it lost the right-of-way it was worth $25,000, or, in other words, the loss suffered by plaintiff was $25,000. This is considerably less than half of the amount claimed by plaintiff, but we do not think that even with the right-of-way left open plaintiff’s property had the value that it would have had had it been adjacent to a public highway at the same distance from the city. The conduct of the Army officer in charge was very inconsistent. While he testified that he closed the passage, believing that he had the right so to do, all his actions negative this statement. He must have known of the long use of this right-of-way, and without any material inconvenience *681 to the Government, could have provided another outlet as agreed with Phillips. In any event what he thought is not conclusive upon the plaintiff for, as before stated, the War Department did not dispute but on the contrary practically admitted the existence of the right-of-way. Under the circumstances a contract to pay just compensation for the damage caused is implied.
Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.
Whaley, Judge, took no part in the decision of this case. '
SUPPLEMENTAL OPINION ON MOTION POR NEW TRIAL
Green, Judge,
delivered the opinion of the court:
Both plaintiff and defendant filed a motion for new trial and to set aside the judgment entered in the case. These motions were sustained with leave to either party to take further evidence on the question of damages sustained by the plaintiff. Such testimony was taken, a further report was made by the commissioner, and the case has been reargued on the question of damages alone.
On the rehearing several questions were submitted. It was specially contended on behalf of defendant that plaintiff’s cause of action was not by reason of the Government having taken anything from him but rested upon the covenant for a right-of-way to his land which ran with the conveyances to the parties whose land the Government had acquired by condemnation, and that consequently the plaintiff was not entitled to interest. We do not think it necessary to consider the nature of this covenant or the effect which it might have in some cases. In the case at bar we are quite clear that both as a matter of law and fact the act of the Government in depriving the plaintiff, Phillips, of the right-of-way and of all practical access to his land constituted a taking of his property within the meaning of' the Constitution which provides that just compensation shall be made for such action. See United States v. Welch, 217 U.S. 333, holding that a right-of-way is an easement and is land. And the compensation to be awarded under the fifth *682 amendment includes the damage done to the land resulting from such taking. United States v. Grizzard, 219 U.S. 180. The measure of the damages is obviously the difference between the value of plaintiff’s land before and after the taking and this must be determined from the evidence in the case.
Counsel for both the plaintiff and defendant dissent very vigorously from the finding made by the commissioner of the court on the value of the property before and after the taking. Counsel for plaintiff insist that the value of the property before the taking as found by the commissioner is far too small; counsel for defendant contend that it is too large. It would unduly extend this opinion to discuss all of the matters which should be considered in weighing the evidence on this point. The value cannot be determined with certainty. We think the amount fixed by the commissioner is probably the best conclusion that can be made from the evidence, and his finding is therefore approved. It will be noticed that the commissioner reduced the value of the land from his former findings. This is because on thje former hearing an error was made as to the extent of plaintiff’s tract, and the parties having now agreed upon the correct acreage the value of the tract is reduced accordingly.
The judgment originally entered allowed the plaintiff no interest on the amount of damages. Shortly after it was entered the Supreme Court decided the case of Jacobs v. United States, 290 U.S. 13. Under the rules laid down in the case last cited, we think it is clear that the plaintiff is entitled to interest, and that this interest should run at six percent from the time that plaintiff was definitely deprived of the right-of-way. This was at least as early as November 1, 1927.
In accordance with the views expressed above, judgment will be entered in favor of the plaintiff, Hugh j. Phillips, for $20,000, with interest at six percent per annum from November 1, 1927, until paid. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton-, Judge; and Booth, Chief Justice, concur.